

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**04/06/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| SOUTHHILLS PLAZA, LLC | § | CASE NO: 08-36398 |
| and | § | |
| EQUATOR PLAZA, LLC | § | |
|     Debtor(s) | § | |
| | § | CHAPTER  11 |

### ORDER DENYING EMERGENCY MOTION FOR STAY PENDING APPEAL
### (DOC # 124)

In docket # 124, Southhills Plaza, LLC and Equator Plaza, LLC (collectively, "Debtors") seek an emergency stay pending appeal.  The motion is denied for procedural deficiencies and on the merits.

A.      Background

Prior to the filing of these bankruptcy cases, FH Partners, LLC, a secured creditor, had posted real property owned by Southhills Plaza, LLC for foreclosure on October 7, 2008. Southhills Plaza filed its voluntary petition commencing a case under chapter 11 of the Bankruptcy Code on October 6, 2008, to stop that foreclosure.[1]  FH Partners filed an immediate non-consent to the use of cash collateral.[2]  Debtor responded with an emergency motion to use cash collateral.[3]  That dispute was resolved on October 28 with an agreed order authorizing the use of cash collateral through January 31, 2009.[4]

GE Business Loan Trust 2004-1 holds a claim secured by Equator Plaza, LLC's property and had posted that property for foreclosure; Equator Plaza filed its voluntary bankruptcy petition to stop that foreclosure.[5]  Equator Plaza reached an agreement with GE similar to the agreement that Southhills reached with FH Partners.[6]

Southhills Plaza and Equator Plaza are closely related entities, and their bankruptcy cases are jointly administered.

On December 16, Debtors stated that cash flow was sufficient to restructure their debts and that FH Partners had agreed to extend the deadline for filing a plan of reorganization to March 4, 2009 (implying consent to continued use of cash collateral).  Debtors indicated that they were committed to a strong effort to sell the property and to pay the secured claims on plan

---

[1] Docket # 25, paragraph 7.
[2] Docket # 4.
[3] Docket # 6.
[4] Docket # 25.
[5] Docket # 57, paragraph 2.
[6] Docket # 55.

confirmation.[7]  FH Partners responded with a statement that its agreement was conditional on Debtor's agreement to propose a plan that provided either (i) to pay FH's claim in full on the effective date of Debtors' chapter 11 plan, or (ii) amortization of FH's claim over not more than 15 years.[8]

The Court held a § 105(d) status and scheduling conference on December 17, 2008.  The Court noted on the record and issued a memorandum stating that the deadlines in the case would be driven by the active negotiations going on between Debtors and their creditors.[9]

On January 20, 2009, Southhills and FH Partners asked the Court to extend the agreement to use cash collateral.[10]  The Court declined to enter the agreed order, stating that it was too far-reaching to be approved without notice to all creditors and parties in interest and without providing an opportunity for all parties in interest to object and to be heard.[11]

After notice and hearing, that stipulation was eventually approved.  It provided, as FH Partners asserted in January, that the stay would lift unless Debtors filed a chapter 11 plan by March 4 that provided (i) for payment of FH Partners in full on the effective date, or (ii) for amortization of FH Partners' restructured note not to exceed 15 years, with a 5 year balloon.[12]  The stipulation further provided that if the proposed plan did not meet those requirements, then the automatic stay would lift allowing FH Partners to foreclose on the property.[13]

On March 3, 2009, Debtor filed its plan of reorganization.[14]  The plan proposed a sale of all of the real property to Everest Ventures, LLC and payment of the secured claims on the effective date.  Debtor did not attach to the Disclosure Statement any contract evidencing an obligation of Everest Ventures to purchase the property.  The ephemeral nature of the plan proposal was further evidenced by the vague description of Debtors' plans in case the sale did not close.  The plan stated:

> If the sale to Everest Ventures falls through, the Debtors reserve the right (sic) amend the means of execution to provide for a refinancing.  If both of these options fail, this Plan contains an alternative for restructure of the Southhills debt while dismissing the Equator case.

In paragraph 4.3.4, the plan clarified the "alternative for restructure" of the Southhills debt to FH Partners.  That paragraph provides for payments based on a 30 year amortization with a 5 year balloon.  The disclosure statement asserts that the alternative restructure is financially feasible.[15]  Exhibit F (which purports to demonstrate that feasibility for payments based on a 30 year amortization), includes no analysis of how the balloon would be paid at the end of year 5.

---

[7] Docket # 57.
[8] Docket # 58, paragraph 3.
[9] Docket # 60, paragraph 3.
[10] Docket # 75.
[11] Docket # 76.
[12] Docket # 83.
[13] Equator Plaza obtained a similar agreement with GE.
[14] Docket # 95.
[15] Docket # 96, paragraph 5.6.

On March 5, FH Partners filed a notice of termination of the automatic stay.[16]  The notice asserts that the stay has terminated for a number of reasons.  For purposes of this decision, the Court focuses only on the allegation that Debtors' plan provided for a 30 year amortization schedule for FH Partners' claim, with a 5 year balloon, not the agreed 15 year amortization.[17]

On March 9, Debtors filed a motion to strike FH Partners' notice of termination of the automatic stay.  Debtors asserted that although their plan alternative provides for a 30 year amortization instead of a 15 year amortization, the existence of the potential payment in full on sale of the property meets the first requirement of the stipulation and therefore the stay did not lift.  After emergency hearing, the Court agreed with FH Partners and on March 15, 2009, the Court issued an order so holding.  Although Debtor filed a notice of appeal on March 25,[18] Debtor did not file this motion for stay pending appeal until April 3.

The instant motion for stay was filed only two business days prior to the scheduled foreclosure.  In this most recent motion, Debtor asserts that the earnest money contract was not received by Debtors until April 3, 2009.  The motion further states that the attached earnest money contract is a "new" contract,[19] and that Debtors have obtained a "new" property appraisal that will allow a 15 year amortization instead of the 30 year amortization that was proposed in the March 3 plan.  The motion candidly admits that the reason for a 30 year amortization in the March 3 plan was that " … the numbers did not support such a plan."[20]

B.      Procedural Deficiencies

By stipulation of the parties, on February 6, 2009, the Court had ordered that the automatic stay would terminate unless Debtors proposed a plan that met certain requirements.  Debtors did not file a plan that satisfied the requirements of the order.  Therefore, the stay terminated on March 4, 2009.

What Debtors actually seek is injunctive relief that prohibits foreclosure on April 7.  Injunctive relief requires Debtors to file an adversary proceeding, not merely a motion commencing a contested matter.[21]  Debtors have known since March 25 that this day was coming and have not filed the appropriate proceeding.[22]  Debtors' motion is procedurally deficient.

---

[16] Docket # 97.

[17] The Court believes that the other allegations in FH Partners' notice have merit.  The Court does not discuss them because the amortization issue is clear and is sufficient for this decision, which must be rendered on an emergency basis.

[18] Docket # 113.

[19] The motion does not disclose whether there was no extant contract with Everest when the plan and disclosure statement were filed or whether there is some material difference between the April 3 contract and any previous contract.

[20] Docket # 124, paragraph 7.

[21] FRBP 7001.

[22] Although the Court has not had time to listen to the recording, the Court believes that it advised Debtors on March 25 that an adversary proceeding would be required to reinstitute the stay.

C.      Substantive Deficiencies

1.      Likelihood of Success on the Merits (Paragraph 8(iii) of the Motion for Stay)

Debtors argue forcefully that the Court was wrong in ruling that the stay had terminated; Debtors argue that the plan satisfied the requirements of its stipulation with FH Partners. However, it is now clear that Debtor did not have an earnest money contract until April 3 and that Debtor could not propose a plan that met the 15 year amortization requirements because " … the numbers did not support such a plan." Had Debtors been candid on March 3 when they filed their plan and disclosures statement and on March 9 when they filed the motion to strike FH Partners' notice of termination of the stay, they would have admitted that they did not have a contract to sell in hand and that they did not comply with the 15 year amortization requirement because " … the numbers did not support such a plan." Instead they stated, or at least strongly implied, that the sale was almost a certainty and that the 30 year amortization was immaterial. Whether or not this has Rule 9011 implications, it certainly leads the Court to conclude that their argument about the Court's error in its ruling is disingenuous and that the likelihood of success on the merits is not as high as Debtors' motion suggests.

2.      Post-Hearing Events

A substantial part of the motion for a stay pending appeal refers to Debtors' alleged accomplishments <u>after</u> the Court's order recognizing the termination of the stay, *i.e.* <u>after</u> the allegedly incorrect decision refusing to continue the stay in effect on March 25. Those events include (i) obtaining a contract to sell the property, and (ii) obtaining appraisals allegedly justifying a 15 year amortization schedule.

The deadline for these accomplishments, ordered on Debtors' request and based on Debtors' stipulation to the Court, was March 4, 2009. Debtor did not accomplish these requirements until April 3, 2009. Although Debtors argue that much good will inure to them and that FH Partners will suffer no harm if the Court grants a stay pending appeal, the Court must give effect to stipulations made to the Court and failure to perform agreements must have consequences. The Court cannot, in good conscience, conclude that events subsequent to the hearing on termination of the stay[23] are the factors that govern probability of success on the merits of a legal argument that is clearly disingenuous.

More important, Debtors had a deadline of March 4 to produce a contract to sell the property or a feasible plan for payment of the claim on a 15 year amortization schedule. If Debtors had met that deadline, there was a process for determining the ability of the purchaser to consummate the sale and a procedure for determining the feasibility of a 15 year amortization schedule. Debtors did not meet that deadline, and instead simply ask the Court to assume the *bona fides* of both, based on last-minute documents and appraisals for which there is no opportunity for a contested hearing. It is unreasonable to insist on the acceptance of those allegations without opportunity to consider objections and adverse evidence.

---

[23] Actually the Court's hearing dealt with Debtors' motion to strike notice of termination of the stay, but the matter litigated was whether the stay continued in force after Debtor filed its March 3 plan.

3.      Equity and Clean Hands

Debtors are essentially asking the Court to ignore their stipulations and agreements made on the record and in orders to which they agreed.  Debtors have, at a minimum, failed to disclose that they did not have a contract to sell when they filed their plan and that "the numbers" did not support a plan that complied with the stipulation with FH Partners.  To ask the Court to do equity by enjoining FH Partners from foreclosing, Debtors must have clean hands.  They do not.

D.      Motion for Stay Denied

For reasons set forth above, the motion for stay (docket # 124) is denied.

SIGNED 04/06/2009.

_____
Wesley W. Steen
United States Bankruptcy Judge